## Frank Stipe, Appellee, v. Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, Appellant.

## Gen. No. 18,387.

MASTER AND SERVANT—*railroads.* Where plaintiff while engaged with a gang of men in cleaning snow from defendant's tracks was struck by a push car which collided with a train at an intersection of the tracks, the negligence relied on being the failure to stop the train before reaching the crossing, to give warning of its approach and to ascertain whether the way was clear before crossing; there being testimony of four witnesses for defendant that the engine stopped within 200 feet of the crossing and gave two whistles for the right of way, that the semaphore was then so placed as to signal to the engine that it had the right of way, and that it proceeded over the crossing with the bell ringing, the testimony of plaintiff being very meagre, a verdict in his favor is manifestly against the weight of the evidence.

Appeal from the Superior Court of Cook county; the HON. CLARENCE N. GOODWIN, Judge, presiding. Heard in the Branch Appellate Court

at the March term, 1912. Reversed and remanded. Opinion filed June 3, 1913. Rehearing denied June 17, 1913.

LOESCH, SCOFIELD & LOESCH, for appellant.

ELMER & COHEN, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

Being of the opinion that the judgment in this case must be reversed and the cause remanded on the ground that the verdict was manifestly against the weight of the evidence, we shall review the record only with reference to that conclusion.

The plaintiff, Stipe, was an employe of the Atchison, Topeka & Santa Fe Ry. Co., engaged with a gang of men in cleaning snow and ice from its tracks. They threw the material upon a car, called a push car, which the evidence tends to show they were pushing westward on said tracks, which ran east and west. Crossing them, north and south, were the tracks of the defendant Company, and one of its engines, hauling a freight train north, struck said push car at said crossing, hurling it to the west of defendant's tracks against plaintiff and causing the injuries sued for.

The case was submitted to the jury on two counts, one of which charged negligence in the operation of the engine, and the other that defendant failed and neglected to bring the train to a full stop before reaching said crossing within 800 feet thereof but continued over the same without stopping and without its engineer ascertaining whether the way was clear, contrary to provisions of the statute in such case made and provided.

The negligence relied on was failure in one or more of three things—to stop the train before reaching the crossing, to give warning of its approach, and to ascertain whether the way was clear before crossing.

Stipe v. P., C., C. and St. L. Ry. Co., 181 Ill. App. 337.

Plaintiff's case was supported by the testimony, more or less meagre, of himself and two of his fellow laborers. Testifying for defendant with reference to the accident were three persons on the engine, the locomotive engineer and two yard brakemen, a switch-tender, who at the time was at a shanty about twenty-five feet east and seventy-five feet north of the crossing, and two engineers, who at the time were engaged in running a survey line for the Sanitary District of Chicago, and were about 150 feet north of said crossing. Their testimony was more or less replete with details consistent with their different points of observation.

On the question whether the train stopped, no one of plaintiff's witnesses testified that it did not stop. Four of defendant's witnesses, those on the engine and the switchman, swore positively that it did, and to circumstances so indicating. They testified that the engine stopped within 200 feet of the crossing; that, as was customary, it gave two blasts of the whistle for the right of way; that the semaphore was then so placed as to signal to the engine that it had the right of way over the crossing; that in response to such signal, the engine again gave two blasts of the whistle; that it thereupon started up, and was going from four to six miles an hour at the time it reached the crossing. They also testified that the automatic bell was ringing from the time the engine started. The switchman and Sanitary District engineers heard the train and saw it when it was about 150 to 200 feet south of the crossing.

The foreman of the gang, who at the time of the accident had gone to a tool shanty about 150 feet away from the crossing, testified that the men of his crew had caps over their ears, it being a cold morning, which, in part, tends to explain their failure to hear the warnings that were unquestionably given, or the exhaust that was heard by the said engineers 150 to 200 feet farther north.

There was another reason for their failure to hear or heed the warnings. It appears that they were accustomed to rely upon their foreman to give them notice of the approach of a train, and may thus have become more or less indifferent to such sounds, as trains were frequently passing in that vicinity. The testimony of the switch-tender that the men had their heads down when they were pushing the car toward the crossing, and that of the plaintiff that he did not look out for the approach of trains and did not know that the foreman had gone to the shanty, tend to support such an inference. On the whole we think the evidence tended most strongly to show that the train stopped and warnings of its approach were given.

Assuming for the sake of argument that the statute requiring the engineer to ascertain, after stopping the engine, if the way is clear before starting it again, applies to a "push car," yet we think the testimony on this point also preponderates against plaintiff's claim. While the plaintiff and one of his witnesses testified that the push car had been on the crossing about five minutes and his other witness that it had been there about fifteen minutes, the testimony of the switch-tender and the engineers, together with other circumstances, is strongly to the contrary. They testified that the men in the crew were pushing the car from the east toward the crossing after the train started; that some of the crew saw the train coming and "hollered," and that all got out of the way except plaintiff. One of said Sanitary District engineers said the men were about twenty-five feet east of the track when the train was coming; that they "seemed to be in a hurry to cross in front before the train would come and when about 20 feet or 15 feet probably, some one called to hold the flat car back and a number of the men tried to hold it back and they found that they could not; the momentum of the car was pulling them in front of the engine and they all let go with the ex-

ception of two men, one of the men that was injured and the other man.'' The testimony of his companion was substantially the same. He said that plaintiff stuck to the car and was pushing it along, and when he was just about in the act of getting away from the car, the engine struck it. The switch-tender testified that he saw the men about 15 or 20 feet east of the crossing, pushing a car toward it after the engine whistled and started, and that the plaintiff continued to stand by the push car after the others jumped away from it. Both of the Sanitary District engineers and the switchman testified there was nothing to obscure their sight of the train. None of the crew on the engine saw the push car. Whether or not the steam of the engine about them and blown in front of them after the train started up, prevented their seeing the approach of the push car, we think the particularity of detail as to the relative movements of the train and push car given by disinterested observers of the accident strongly supports the conclusion that the track was clear when the engine started.

Under the foregoing circumstances, we think the evidence for the plaintiff was too meagre as against the harmonious testimony to the contrary of so many witnesses, some of them entirely disinterested, to establish negligence on the part of defendant.

Whether or not the evidence did not preponderate in favor of defendant also on the question of contributory negligence seems more than doubtful, but as the case must be remanded for a new trial on the ground stated, we need not consider it. We cannot say that it was a question of law. The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*